FILED
United States Court of Appeals
Tenth Circuit

October 18, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GARRY THOMAS ALLEN,

        Petitioner-Appellant,

v.

RANDALL G. WORKMAN, Warden,
Oklahoma State Penitentiary,

        Respondent-Appellee.

No. 12-6253
(D.C. No. 5:12-CV-00140-R)
(W.D. Okla.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

---

Before **KELLY**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

Garry Thomas Allen, an Oklahoma state prisoner sentenced to death, seeks a

stay of execution and a certificate of appealability (COA) to appeal the district

court's order denying his habeas petition, which challenges his competency to be

executed under *Panetti v. Quarterman*, 551 U.S. 930 (2007), and *Ford v. Wainwright*,

477 U.S. 399 (1986). Specifically, he contends that Oklahoma's procedure for

determining a defendant's competency to be executed[1] "unconstitutionally places an

---

[1]     Oklahoma Statute Title 22, § 1005, provides:

    If, after his delivery to the warden for execution, there is good reason to
believe that a defendant under judgment of death has become insane, the
warden must call such fact to the attention of the district attorney of the
county in which the prison is situated, whose duty is to immediately file

    (continued)

inmate's fate entirely within the hands of the Warden, i.e., he acts as the sole gatekeeper to the incompetency process, and that no recourse is provided from such a decision." Case Mgmt. Statement at 10. Mr. Allen further contends that he is presently incompetent or will become incompetent by the time of execution due to his seizure disorder. We deny a COA, dismiss the appeal, and deny a stay as moot.

## BACKGROUND

In 1986, Mr. Allen shot his girlfriend to death outside of an Oklahoma City day-care center. When police arrived and attempted to arrest him, he attacked one of the officers and was shot in the head while attempting to take the officer's gun. He was sentenced to death after pleading guilty to first degree murder.

His original execution date was set for May 19, 2005. But shortly before the execution was to be carried out the warden initiated competency proceedings as provided in § 1005 based upon an expert opinion calling into doubt Allen's competency to be executed (sanity). After considerable delay, in 2008, a jury trial was held to determine Mr. Allen's competency to be executed. He was found sane by a 9 to 3 vote.

After unsuccessfully seeking a new trial, Mr. Allen appealed to the Oklahoma Supreme Court in 2009, which transferred the case to the Oklahoma Court of

in the district or superior court of such county a petition stating the conviction and judgment and the fact that the defendant is believed to be insane and asking that the question of his sanity be inquired into. Thereupon, the court must at once cause to be summoned and impaneled from the regular jury list a jury of twelve persons to hear such inquiry.

Criminal Appeals (OCCA) in December 2010 when it "recogniz[ed] that [the OCCA] had jurisdiction over criminal matters." *Allen v. State*, 265 P.3d 754, 755-56 (Okla. Crim. App. 2011). But the OCCA concluded that an appeal of a jury's sanity finding was neither statutorily authorized nor constitutionally mandated, and it dismissed the appeal in December 2011. *Id.* at 757.

An execution date was then set—February 16, 2012. But before that date arrived, Mr. Allen's counsel arranged for yet another psychological evaluation with Dr. Michael Gelbort, who reported that Mr. Allen was not sane.

Armed with that report, Mr. Allen filed the instant habeas action in federal district court, and he submitted the report to the warden, who declined to again initiate competency proceedings under § 1005. Meanwhile, the governor denied Mr. Allen clemency, but extended the execution date to April 12, 2012.

Next, the district court approved Mr. Allen's request to seek mandamus relief in the state trial court. Following an evidentiary hearing, the trial court ruled that the warden did not abuse his discretion in refusing to initiate § 1005 proceedings.

Mr. Allen then turned to the OCCA for mandamus relief. The OCCA denied relief, determining that (1) the warden, in refusing to initiate § 1005 proceedings, was not acting as the final arbiter of sanity given that the trial court had reviewed the warden's decision for an abuse of discretion; and (2) Mr. Allen had not "met the substantial threshold showing that his condition has substantially deteriorated from

the time a jury found him sane until the present date." *Allen v. Workman*, No. MA-2012-307, slip op. at 4 (Okla. Crim. App. Apr. 10, 2012).

Following the OCCA's denial of mandamus relief, the federal district court stayed Mr. Allen's execution so that it could resolve his habeas case. In an en banc order and judgment this court affirmed the stay. *See Allen v. Workman*, No. 12-6094 (10th Cir. Apr. 19, 2012) (en banc) (per curiam).

Proceedings then resumed below, with the district court denying Mr. Allen's motions for discovery and an evidentiary hearing. The court then denied his petition for habeas relief, declined to issue a COA, and lifted the execution stay.

## DISCUSSION

### I. Standards of Review

We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the applicant must show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Allen v. Zavaras*, 568 F.3d 1197, 1199 (10th Cir. 2009) (internal quotation marks omitted).

In determining whether the COA applicant has made the required showing, we must incorporate the standards provided under the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). AEDPA provides that if a state court adjudicated the merits of a claim, a federal court

- 4 -

cannot grant habeas relief unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

## II.  The Warden's Gatekeeping Function

Mr. Allen argues that Oklahoma's procedure for assessing competency, which places the warden in a gatekeeping role, violates *Ford* because the warden is both executioner and "guardian of an[ ] inmate's competency."  Case Mgmt. Statement at 11.  In *Ford*, the Supreme Court held that due process prohibited Florida from granting its governor the exclusive authority to determine an inmate's competency to be executed.  477 U.S. at 416.  The Court reasoned:

> Under [Florida's] procedure, the person who appoints the experts and ultimately decides whether the State will be able to carry out the sentence that it has long sought is the Governor, whose subordinates have been responsible for initiating every stage of the prosecution of the condemned from arrest through sentencing.  The commander of the State's corps of prosecutors cannot be said to have the neutrality that is necessary for reliability in the factfinding proceeding.

*Id.*

But here, as the district court noted, a jury is the ultimate arbiter of sanity, and both the state trial court and the OCCA reviewed the warden's gatekeeping function. And *Ford* contemplates such a role, given the Court's recognition that it may be necessary for states to require "some high threshold showing on behalf of the

- 5 -

prisoner . . . to control the number of nonmeritorious or repetitive claims of insanity." *Id.* at 417.

Thus, the district court's determination that the state court's resolution of Mr. Allen's gatekeeping claim was neither contrary to, nor an unreasonable application of, *Ford* is not debatable or worthy of further treatment.

### III.  Competency to be Executed

In *Panetti*, the Supreme Court stated that in light of *Ford*, "[o]nce a prisoner seeking a stay of execution has made a substantial threshold showing of insanity, the protection afforded by procedural due process includes a fair hearing in accord with fundamental fairness."  551 U.S. at 949 (internal quotation marks omitted).  Thus, the Court held that Mr. Panetti was entitled to a *Ford* hearing based on his competency motion, which "included pointed observations made by two experts the day before petitioner's scheduled execution; and it incorporated . . . references to the extensive evidence of mental dysfunction considered in earlier legal proceedings."  *Id.* at 950.

Mr. Allen contends he is incompetent at baseline and especially so if he has a seizure at the time of execution.  He relies on Dr. Gelbort's opinion.

The district court addressed Mr. Allen's claims both in regard to the 2008 trial and in regard to current conditions.  As to the trial, the court observed that the evidence was "more than sufficient for a rational trier of fact to have found that [Mr. Allen] failed to provide sufficient evidence to show he was legally insane."

*Allen v. Workman*, No. CIV-12-140-R, 2012 WL 4470655, at \*9 (W.D. Okla. Sept. 26, 2012).  Mr. Allen does not appear to contest this determination.

As for his current mental state, the district court cited Dr. Gelbort's testimony from the trial court's mandamus hearing indicating that while Dr. Gelbort believed Mr. Allen was insane, "'especially after a seizure or when he's in those interictal periods,'" there were other times in which he would find Mr. Allen sane, but those times were "'hard to predict.'"  *Id.* at \*\*9-10 (quoting Mandamus Tr. at 59).  The district court further noted the warden's testimony that he had met with Mr. Allen and had evaluated reports of Mr. Allen's interactions with prison staff, all of which led him to believe Mr. Allen was not insane.  And the warden had indicated he would not execute Mr. Allen during a seizure or while he was in a post-seizure state of confusion, and that the attending physician would determine if seizure-related issues were occurring.

Based on these points, the district court determined that Mr. Allen had "not demonstrated that either the threshold showing [of insanity] was met, or that the state court's determination of that fact was unreasonable."  *Id.* at \*11.  We conclude that the district court's determination is not debatable and that the issue warrants no further consideration.

## CONCLUSION

Mr. Allen's request for a COA is DENIED and this appeal is DISMISSED. The motion for a stay is DENIED as moot.

Judge O'Brien concurs in the result only.

Mr. Allen is advised that any petition for panel or en banc rehearing must be filed on or before Thursday, October 25, 2012 at 5:00 pm Mountain Time. *See* Fed. R. App. P. 2 (noting court may "suspend any provision" of the rules for good cause).

Entered for the Court
Per Curiam